**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re Ex Parte* Application of<br><br>MOUSSY SALEM,<br><br>                               Applicant,<br><br>FOR AN ORDER TO TAKE DISCOVERY<br>PURSUANT TO 28 U.S.C. § 1782 FROM<br>SAUL SUTTON. | **Civil Action No.** |

**MEMORANDUM OF LAW IN SUPPORT OF MOUSSY SALEM'S**
**APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

**BROWN RUDNICK, LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Lauren Tabaksblat, Esq.
(Bar No. 037322008)
Tyler D. Purinton, Esq.
(*pro hac vice* forthcoming)
ltabaksblat@brownrudnick.com
tpurinton@brownrudnick.com

*Attorneys for Applicant Moussy Salem*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND .....................................................................................4

    A.  The Salem Family. ..................................................................................4

    B.  The African Businesses. ..........................................................................5

    C.  Management of the African Businesses. .................................................7

    D.  The English Proceedings. ........................................................................9

ARGUMENT ...........................................................................................................10

I.   THIS APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF
     28 U.S.C. § 1782 ..............................................................................................10

    A.  Sutton Resides in New Jersey. ..............................................................11

    B.  The Application Seeks Documents. .......................................................12

    C.  Moussy Salem Is An Interested Person. ...............................................12

    D.  The Discovery Sought Is "For Use" In The English Proceedings. ...............12

II.  THIS COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE
     APPLICATION ...............................................................................................14

    A.  Sutton Is Not A Participant In The Foreign Proceedings. ...........................14

    B.  There Is No Evidence That The English Court Would Not Be Receptive To
       This Court's Assistance. .........................................................................15

    C.  This Application Does Not Implicate Any Foreign Proof-Gathering
       Restrictions. ...........................................................................................16

    D.  The Discovery Sought Is Not Unduly Burdensome. ............................18

CONCLUSION .......................................................................................................19

i

# TABLE OF AUTHORITES

**Cases**                                                                                              **Page(s)**

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
   633 F.3d 591 (7th Cir. 2011) .................................................................................................. 19

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)........................................................................................ 11, 16, 18

*In re Biomet Orthopaedics Switzerland GmBh*,
   742 F. App'x 690 (3d Cir. 2018) ........................................................................ 11, 14, 15, 18

*In re Caterpillar Crédito, Sociedad Anónima de Capital Variable, Sociedad Financiera de
Objecto Multiple, Entidad Regulada*,
   2023 WL 6317913 (D. Del. Sept. 28, 2023) ................................................................... 15

*In re Chevron Corp.*,
   633 F.3d 153 (3d Cir. 2011)................................................................................................ 16, 17

*In re Ex Parte Application of Sandoz Canada, Inc.*,
   2020 WL 5642189 (D.N.J. Sept. 22, 2020) ................................................................. 11, 12, 15

*In re Martin & Harris Priv. Ltd.*,
   2021 WL 2434069 (D.N.J. June 14, 2021) ................................................................. 17

*In re Novoship (UK) Ltd.*,
   2020 WL 3286308 (S.D. Fla. June 18, 2020) ......................................................... 16

*In re O'Keeffe*,
   646 F. App'x 263 (3d Cir. 2016) ............................................................................ 11, 15, 17

*In re the Application of Sauren Fonds-Select SICAV*,
   2016 WL 6304438 (D.N.J. Oct. 26, 2016)................................................................. 12

*In re Third Eye Capital Corp.*,
   2022 WL 714758 (D.N.J. Mar. 10, 2022)................................................................. 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)................................................................................................ passim

*Matter of Rosa Carolina Germano Dos Santos*,
   2023 WL 4993673 (D.N.J. Aug. 4, 2023) ............................................................... 15, 17

*Matter of Simetra Glob. Assets Ltd. & Richcroft Invs. Ltd.*,
    2016 WL 3018692 (D.N.J. May 25, 2016) ................................................................. 16

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015).................................................................................... 12, 18

*South Carolina Ins. Co. v. Assurantie Maatschappik "De Zeven Provincien" N.V.*,
    [1987] 1 App. Cas. 24 (1986) (House of Lords)......................................................... 16

**Statutes**

28 U.S.C. § 1782.............................................................................................................. 1, 11

Moussy Salem ("Moussy" or "Applicant"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his application (the "Application") for an order pursuant to 28 U.S.C. § 1782 authorizing him to seek discovery from Saul Sutton ("Sutton") in accordance with the form of subpoena *duces tecum* attached to the Application as **Exhibit A** (the "Subpoena").

## PRELIMINARY STATEMENT

This Application is in aid of a civil proceeding currently pending before the High Court of Justice, Business & Property Courts of England and Wales, Business List (ChD), Claim No. BL-2022-000926 (the "English Proceedings"). In the English Proceedings, Moussy, on behalf of Monline International Limited ("Monline International"), asserts claims against one of Monline International's directors, Freddy Salem ("Freddy"), and Monline UK Limited ("Monline UK") and Monline UK's sole directors and shareholders, Salim Levy and Ezra Aghai (together, the "English Defendants").

The English Proceedings arise from the English Defendants' conspiracy to oust Moussy from the family businesses and misappropriate profits due to Moussy and his mother. The businesses at issue are a series of trading businesses, described herein as the African Businesses, that are owned by the Salem family, including Moussy, through a series of trusts. Until 2013, Moussy participated in the management of the African Businesses. In 2013, his uncles, Freddy and Beno Salem, and Freddy's son Philip, ousted Mousy from the management of the businesses. Since that time, Moussy has been denied access to documents and other critical information concerning the affairs and revenues of the African Businesses.

Moussy holds a 50% interest in Monline International. As of March 30, 2016, Monline International's core asset was a logistics agreement with Morsgate International Limited

("Morsgate"), pursuant to which Monline International provided logistics and management services (the "Parker Services") to the African Businesses. In return, Monline International received fees from Morsgate based on a percentage of the expenditures incurred to provide those services. Historically, Morsgate has served as the *de facto* treasury company for the African Businesses.

On or around June 7, 2016, Freddy transferred Monline International's assets—including the logistics agreement with Morsgate—to a new company, Monline UK, which is owned and directed by Defendants Levy and Aghai. Neither Moussy nor his mother hold any interest in Monline UK. The transfer was made without Moussy's knowledge and without consideration. Following the transfer, Monline UK became responsible for providing the Parker Services to the African Businesses, and in turn, collected the substantial fees from Morsgate generated therefrom.

Defendants Monline UK, Levy, and Aghai have recently admitted in the English Proceedings that in or around July 2017, Monline UK ceased providing Parker Services to Morsgate. Instead, Monline UK began providing Parker Services to another newly formed company called Gestcom International Trading Offshore SAL/Gee Trading (Offshore) SAL ("Gestcom Trading"). This continued until around March 2021, when Monline UK ceased providing Parker Services altogether. Based on these admissions, Gestcom Trading effectively replaced Morsgate as the treasury company for the African Businesses—including with respect to the receipt of Parker Services until at least March 2021—and Gestcom Trading or other unknown third parties may currently still be providing Parker Services to other unknown third parties.

The chain of events concerning the provision and receipt of Parker Services and the revenues generated therefrom following the asset transfer from Monline International to Monline UK and thereafter is a critical issue in the English Proceedings. Pursuant to the logistics agreement, the revenues earned from the provision of Parker Services are calculated based on the cost incurred to provide those services, which, in turn, is contingent on the scope of the African Businesses' operations and expenditures. Therefore, to quantify the value of the Parker Services the English court will need to determine the operations and expenditures of the African Businesses.

Saul Sutton is a director of Maiddat MI Limited ("Maiddat") and Africa International Group ("AIG"). AIG operates a strategic partnership with Forewin Ghana Limited (Ghana) ("Forewin Ghana") called HMD Forewin. Maiddat, AIG, Forewin Ghana, and HMD Forewin are significant players in the African Businesses and were, and may continue to be, recipients of Parker Services. Accordingly, as an officer of Maiddat and AIG, Sutton has critical information regarding Maiddat's, AIG's, Forewin Ghana's, and HMD Forewin's operations and expenditures, receipt of Parker Services, and the amounts paid for those services, which are primary issues in the English Proceedings.

Sutton is also the son-in-law of Beno Salem ("Beno"), Moussy's other uncle who since 2013 has been responsible for, with others, managing several of the African Businesses. Moussy alleges in the English Proceedings that Beno conspired with Freddy and Philip to exclude Moussy from the management and profits of the African Businesses. Accordingly, Sutton has critical information pertaining to efforts by Beno, Freddy, and Philip to restructure management of the African Businesses to prevent Moussy and his family from receiving the profits owed.

As further detailed below, this Application meets all of the statutory requirements of Section 1782. Sutton is "found" in this District because he resides in New Jersey. The discovery sought is highly material and relevant to the issues in the English Proceedings, and is "for use" in those proceedings. The documents and information requested will assist Moussy in establishing the fraud and breaches of duties by Freddy, and will provide critical information to calculate the equitable compensation and/or damages for the assets transferred out of Monline International.

Moreover, each of the *Intel* discretionary factors are met. Sutton is a nonparticipant in the English Proceedings and cannot be compelled by the English court to disclose information or documents, nor is the Subpoena an attempt to circumvent English proof-gathering restrictions. Finally, the Subpoena is narrowly tailored to documents and information concerning the main issues in the English Proceedings, including the fraud perpetrated by Freddy, as well as the provision and receipt of Parker Services and the revenues derived therefrom.

For these reasons and those detailed below, Moussy respectfully requests that the Court grant the Application and permit Moussy to serve the Subpoena on Sutton.

## FACTUAL BACKGROUND

### A. The Salem Family.

Moussy is a member of the Salem family. The Salem family is composed of the children of Moussa Salem (Moussy's grandfather) and Perla Ishak Yael, and their descendants. It is composed of four branches corresponding to Moussa's and Perla's four children: (i) the late Raymond Salem, husband to Mireille Salem and father to Moussy (the "R Branch"); (ii) Beno Salem and his family (the "B Branch"); (iii) Freddy Salem and his family (the "F Branch"); and (iv) Isaac Salem and his family (the "I Branch"). The four branches each hold or held interest in

various trusts established by Moussa and Perla.  Declaration of Simon Goldring ("Goldring

Decl.") (attached as Exhibit 1 to the Declaration of Lauren Tabaksblat), Ex. C, ¶ 4.

The I Branch's interests in these trusts have already been separated from those of the rest

of the Salem family; the R, F, and B Branches, however, remain connected because they are all

beneficiaries of certain trusts (which hold some parts of the African Businesses) and because

they are beneficiaries of separate trusts which share interests in the same assets (again parts of

the African Businesses).  *See id.*  At present, there has been a near total breakdown in relations

between the R Branch (Moussy's branch) and the F and B Branches.

**B.**     **The African Businesses.**

The Salem family operates a trading business in West Africa, known as the African

Businesses, which are beneficially owned in equal parts by the R, F, and B Branches.  *See*

Goldring Decl., Ex. C, ¶¶ 4-5.  The African Businesses' operations include the import and

distribution of consumer products such as pharmaceuticals, tobacco products, personal care,

food, alcoholic and non-alcoholic beverages, and confectionary products.  *See id.* ¶ 5(c).

Historically, the R, F, and B Branches managed the African Businesses equally.  *See id.*

¶ 4.  Moussy took over the R Branch's management duties in 1997 upon his father's incapacity

due to a stroke.  *See id.* ¶ 4(d).  In 2013, however, Moussy was excluded from managing the

African Businesses, which since then have been under the control of Freddy, Beno, and Freddy's

son, Philip.  *See id.* ¶ 4(f)-(g).  Accordingly, from 2013 onward, Moussy has been denied access

to the email systems and physical offices used to run the African Businesses, namely those

systems owned and offices used by Parker Logistics Limited ("Parker Logistics") to provide

Parker Services until 2016, and thereafter by Monline International, Monline UK, and any

unknown third parties that may be currently providing Parker Services.  *See* Goldring Decl. ¶ 8.

As a result, since 2013, Moussy and other members of the R Branch have had very limited information concerning the operation of the African Businesses, including the provision of Parker Services, though they have remained entitled, as beneficiaries of various Salem family trusts, to their share of profits from the African Businesses.

As alleged in the English Proceedings, the Salem family trusts receive profits from the African Businesses through a corporate structure involving several offshore companies, including Morsgate. Goldring Decl., Ex. C, ¶ 3. Once the R Branch was excluded from management of the African Businesses, however, the profits from the African Businesses paid out to the R Branch through the trusts suffered a sudden and inexplicable decline. *See id.* ¶¶ 3(d), 4(g). Moussy alleges in the English Proceedings that Beno, Freddy, and Philip, who continue to manage the trading companies overseeing the African Businesses, have altered the management of the African Businesses in order to divert profits away from Moussy and the R Branch. *See id.* ¶ 4(f)-(g); *see also* Goldring Decl., Ex. A, ¶ 25.

Among the African Businesses are Maiddat, AIG, Forewin Ghana, and HMD Forewin. *See* Goldring Decl., Ex. C., ¶¶ 3(d), 5(d). Forewin Ghana is a Ghanaian distribution and marketing company that distributes a large number of consumer brands in Ghana, including Red Bull and Mars confectionary products. Declaration of Lauren Tabaksblat ("Tabaksblat Decl.") ¶ 8 & Ex. 4. HMD Forewin is a "strategic partnership" between Forewin Ghana and AIG that supplies heavy-duty machinery for the construction and mining sector, as well as road and asphalt processing plants. *Id.* ¶ 9 & Ex. 5. It is described as "a major part of AIG." *Id.* Maiddat is an African Business incorporated in Mauritius. *Id.* ¶ 6 & Ex. 2. Sutton is a director of both Maiddat and AIG. *Id.* ¶¶ 6-7 & Exs. 2, 3.

C.    **Management of the African Businesses.**

Historically, one of the primary ways that the Salem family operated the African Businesses was through an English company called Parker Logistics, which had a logistics agreement with Morsgate (the "Morsgate Agreement"). *See* Goldring Decl., Ex. A, ¶ 15. Morsgate operated as a treasury company for various companies within the African Businesses, and formed part of a corporate structure by which profits earned by trading companies operating in West Africa were transferred up to the Salem family trusts as the ultimate beneficiaries. *See* Goldring Decl., Ex. C., ¶¶ 3(d), 5(d). Specifically, profits generated by the trading companies were paid to and held by Morsgate, which then transferred the money to upstream companies (primarily Glynfield Finance Limited and Transglobe Logistics Limited), which then made payments to the trusts. *See id.* Thus, the money flow from the African Businesses, to Morsgate, to Glynfield/Transglobe, to the trusts operated as a conduit for sending profits from the African Businesses to the Salem family.

Pursuant to the Morsgate Agreement, Parker Logistics provided logistical and management services to the African Businesses through Morsgate, including distribution, banking, IT, training, management and oversight of employees, recruitment, interfacing with suppliers, shipping, transportation and forwarding, warehousing, and purchasing—*i.e.*, the Parker Services. *See id.* ¶ 3(c); *see also* Goldring Decl., Ex. A, ¶ 15(c). In return, Parker Logistics received service fees that were calculated based on a percentage of the costs incurred to provide those services and support the African Businesses' operations. *See* Goldring Decl. ¶ 12; Goldring Decl., Ex. B, ¶ 9.

In March 2016, the B and F Branches transferred management of the African Businesses, including the right to provide Parker Services to these businesses via Morsgate, from Parker Logistics to Monline International. *See* Goldring Decl., Ex. A, ¶ 16(b). Monline International

7

was incorporated in the British Virgin Islands on September 23, 2005.  *Id.* ¶ 2.  At all material times, Freddy owned 50% of Monline International, and Moussy and his mother beneficially owned the remaining 50%.  *Id.* ¶ 5.  Monline International was effectively dormant until it took over the provision of Parker Services from Parker Logistics in March 2016.  *See id.* ¶ 6.  Moussy loaned Monline International funds to finance the transfer of the Parker assets (including the Morsgate Agreement) to Monline International.  *See* Goldring Decl., Ex. B, ¶ 11.

Shortly thereafter, a representative of Freddy requested that Moussy agree to a further transfer of management, this time from Monline International to a newly formed English company.  *See* Goldring Decl., Ex. A, ¶ 19(a).  Moussy did not object, on the condition that the ownership structure remained the same and that he and Freddy were both appointed directors of the new company.  *Id.* ¶ 19(b).  Instead, on or about June 7, 2016, Freddy—without disclosure to Moussy—transferred the assets of Monline International (including the right to provide Parker Services) to Monline UK, in which neither Moussy nor his mother had any ownership interest or control, and for no or insufficient consideration.  *Id.* ¶¶ 18-19.  Thus, beginning in June 2016, Monline UK became the sole provider of Parker Services.

On July 11, 2023, after the English Proceedings had commenced, Monline UK, Salim Levy, and Ezra Aghai admitted that Monline UK had ceased providing Parker Services to Morsgate in or around July 2017.  Instead, at that point, Monline UK began providing Parker Services to a newly formed Lebanese company called Gestcom Trading.  Goldring Decl. ¶ 10-11.  On August 2, 2023, the English Defendants further admitted that in or around March 2021, Monline UK ceased providing Parker Services entirely.  *Id.* ¶ 11.  Thus, from July 2017, Gestcom Trading took over Morsgate's role as treasurer in the African Businesses, including with respect to the receipt of Parker Services and the management of those businesses.  Gestcom

Trading or other unknown third parties may currently be providing Parker Services to other unknown third parties. *See id.* ¶ 10-11. The provision of Parker Services after July 2017 remains an ongoing line of inquiry in the English Proceedings. *Id.* ¶ 11.

**D.    The English Proceedings.**

On October 12, 2020, a British Virgin Islands court ordered Monline International to be wound up. *See* Goldring Decl., Ex. A, ¶ 3. The court appointed two liquidators who conducted an investigation into Monline International's affairs and determined it was necessary to initiate a separate litigation in the UK against Freddy, Monline UK, and the two directors and shareholders of Monline UK (Levy and Aghai). *See id.* ¶ 8. This resulted in the commencement of the English Proceedings, and on October 4, 2022, an English court assigned the prosecution of the case to Moussy pursuant to a deed of assignment between Monline International and Moussy. *See id.* ¶ 1.

The English Proceedings involve three core claims: (i) breach of duty by Freddy; (ii) gratuitous transfer by Freddy (and knowing receipt of that transfer by Monline UK, Levy, and Aghai); and (iii) conspiracy to divest Monline International of its assets to place those assets out of Moussy's reach. *See* Goldring Decl., Ex. A.

Sutton, as a director of Maiddat and AIG, has information concerning Maiddat, AIG, and AIG's strategic partnership with Forewin Ghana (HMD Forewin), including those entities' receipt of Parker Services from Monline UK, the payments made for those services via Morsgate, the circumstances under which Monline UK ceased providing those services, and whether the entities currently receive those services from third parties. This will assist the English court to understand how Defendants perpetrated their scheme to divert, and the damages Monline International suffered as a result.

The English court will also need to assess what revenue and profits Monline International would have made but for the unlawful diversion of business to Monline UK and beyond.  To do so, the court will need to understand the operations and expenditures of the African Businesses, as Monline International's revenues and profits would have derived from the services needed and provided to support those operations and expenditures.  Sutton possesses information concerning the activities and expenditures of Maiddat, AIG, Forewin Ghana, and HMD Forewin, all major players in the African Businesses.  Sutton also has information related to the amounts Morsgate paid to Monline UK (or others) for those entities' receipt of Parker Services.

On July 19, 2023, the English court ordered the parties to disclose documents relevant to, among other, the following issues: (i) the control of Monline UK; (ii) whether and under what circumstances Monline UK ceased to provide Parker Services; and (iii) the payments Monline UK has received for the provision of Parker Services to the African Businesses.  *See* Goldring Decl. ¶ 14.  Moreover, the provision of Parker Services from July 2017 onwards is an ongoing line of investigation in the English Proceedings, and the English court will need to understand (i) whether Parker Services were still required after March 2021, and (ii) what entity, if any, provided Parker Services after March 2021.  Although Sutton is not a party to the English Proceedings and therefore not subject to the disclosure order, he possesses documents and information highly relevant to these issues.

## ARGUMENT

### I.    THIS APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782.

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  The statute was "designed to

10

facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191 (3d Cir. 1998).

Courts may grant a Section 1782 application where the following four statutory factors are met: (i) the discovery target resides in the district; (ii) the application seeks "testimony or [a] statement" or the production of a "document or other thing"; (iii) the application is made by an "interested party"; and (iv) the discovery is "for use in proceedings before a foreign or international tribunal." *In re O'Keeffe*, 646 F. App'x 263, 265 n.4 (3d Cir. 2016); *see also* 28 U.S.C. § 1782.  The burden for establishing these factors is low; the Third Circuit has held they are "modest prima facie elements." *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 695 (3d Cir. 2018) (quoting *Bayer AG*, 146 F.3d at 191-92).  As detailed below, Moussy satisfies each of the four statutory requirements.

### A.    Sutton Resides in New Jersey.

The first statutory requirement—that the discovery target resides in the district of the court deciding the application—is satisfied because Sutton resides in New Jersey.  *See* Tabaksblat Decl. ¶ 11 & Ex. 6 (driver's license information from Transunion's TLO database showing Sutton resides in Deal, New Jersey); *see also In re Ex Parte Application of Sandoz Canada, Inc.*, 2020 WL 5642189, at *3 (D.N.J. Sept. 22, 2020) (finding first statutory factor met based on applicant's "represent[ation] that [the discovery target] is a resident of Somerset, New Jersey" because "[c]ourts have found that such a representation satisfies the first statutory factor").

### B.    The Application Seeks Documents.

The second statutory requirement is satisfied because this Application seeks documentary evidence, as set forth in the Subpoena.

### C.    Moussy Salem Is An Interested Person.

Moussy Salem is an "interested person" under Section 1782.  The Supreme Court has held that an "interested person" includes a "complainant [who] 'possess[es] a reasonable interest in obtaining [judicial] assistance.'"  *Intel*, 542 U.S. at 256.  Moussy is the claimant in the English Proceedings, and by this Application seeks highly material and relevant evidence to support his claims in those proceedings.  He thus has a clear interest in obtaining judicial assistance to help him prosecute those claims and is an "interested person" for purposes of the statute.  *See Sandoz Canada*, 2020 WL 5642189, at *3 ("Petitioner is a party in the Canadian patent litigations and, therefore, qualifies as an interested person under Section 1782.").

### D.    The Discovery Sought Is "For Use" In The English Proceedings.

The information sought in the Subpoena is for use in an ongoing foreign proceeding. This Court "interpret[s] the 'for use' phrase liberally, to include 'any materials that can be made use of in the foreign proceeding to increase [the applicant's] chances of success.'"  *In re the Application of Sauren Fonds-Select SICAV*, 2016 WL 6304438, at *3 (D.N.J. Oct. 26, 2016) (quoting *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)) (finding factor met where "Petitioner provided a sworn statement that the discovery sought by the subpoena is to aid it in prosecuting its claims in the German action").  "The Supreme Court of the United States has instructed that a district court should not consider the discoverability or admissibility of the information in the foreign forum in making its determination."  *Sauren Fonds-Select*, 2016 WL 6304438, at *3; *see also Intel*, 542 U.S. at 260 ("Beyond shielding material safeguarded by an applicable

12

privilege . . . nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there.").

 Here, Moussy intends to use the discovery sought in the English Proceedings.  An order for disclosure has been given in those proceedings, and the information sought from Sutton is consistent with the information that the Defendants are required to disclose.  For example, one of the issues in dispute is whether adequate consideration was paid for the transfer of the Morsgate Agreement from Monline International to Monline UK in June 2016.  The revenues generated by the provision of Parker Services is directly relevant to this determination.  As an officer of Maiddat and AIG, the latter of which operates HMD Forewin as a partnership with Forewin Ghana, Sutton possesses records relevant to the amounts paid for those services.  Sutton also possesses highly relevant information regarding the expenditure and operations of these entities, which, in turn, will inform the value of the Parker Services.  The requested discovery will therefore assist the English court in understanding the value of the Parker Services at the time of the transfer and what adequate consideration would have been for such services.  It will also assist Moussy in his efforts to quantify the value of his claims, that is, the profits Monline International would have generated from providing Parker Services but for the unlawful transfer.

 Moreover, the continued changing hands of the provider of Parker Services is a continuing line of investigation in the English Proceedings.  Information from Sutton regarding the receipt of Parker Services from June 2016 onward will aid the English court in understanding what services were provided, whether Parker Services were still required after March 2021, and what entity provided such services from that point onward.

In sum, the requested discovery will aid the English court in understanding the full chain of events surrounding the provision of Parker Services, the adequacy of the consideration paid for the transfer from Monline International to Monline UK, and the extent of Moussy's damages.

## II.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE APPLICATION.

Where, as here, Section 1782's statutory elements are satisfied, a district court may grant discovery in its discretion.  *See Intel*, 542 U.S. at 264; *Biomet*, 742 F. App'x at 694-96 (vacating order quashing subpoena where district court's analysis of discretionary factors was "cursory and conclusory").

The Supreme Court outlined four factors courts should consider when deciding whether to exercise its discretion under Section 1782: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether the request is otherwise "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65; *Biomet*, 742 F. App'x at 696.  These factors all weigh in favor of granting the Application.

### A.    Sutton Is Not A Participant In The Foreign Proceedings.

"The Supreme Court has recognized that the need for U.S. court assistance is most apparent where the § 1782 respondent is not a party to the foreign action and not otherwise within the jurisdiction of the foreign court."  *In re Caterpillar Crédito, Sociedad Anónima de Capital Variable, Sociedad Financiera de Objecto Multiple, Entidad Regulada*, 2023 WL

6317913, at *3 (D. Del. Sept. 28, 2023) (finding first factor met because discovery targets were not parties to foreign proceeding).  For that reason, courts routinely grant discovery when the discovery target is not a party to the foreign proceeding.  *See, e.g.*, *O'Keeffe*, 646 F. App'x at 266 (affirming order denying motion to quash where discovery target was not a participant in foreign action); *In re Third Eye Capital Corp.*, 2022 WL 714758, at *3 (D.N.J. Mar. 10, 2022) (granting application where petitioner represented that discovery target was "not expected to be a party" to the foreign action); *Sandoz Canada*, 2020 WL 5642189, at *3 (similar).

Here, Sutton is not a party to the English Proceedings.  Accordingly, the first factor weighs strongly in favor of granting the Application.

### B.    There Is No Evidence That The English Court Would Not Be Receptive To This Court's Assistance.

The second discretionary factor also weighs in favor of Moussy.  The inquiry under this factor is not "whether *particular* evidence would be admissible in a foreign court," but rather whether the foreign tribunal is "generally [] receptiv[e] to 'U.S. federal-court judicial assistance.'"  *O'Keeffe*, 646 F. App'x at 267 (quoting *Intel*, 542 U.S. at 264).  Accordingly, this Court has made clear that it will not "wade into interpreting discovery law applicable to [the foreign tribunal] when conducting the Section 1782 application analysis" because that "is exactly the kind of speculative foray[] into legal territories unfamiliar to federal judges that would be in tension with § 1782."  *Matter of Rosa Carolina Germano Dos Santos*, 2023 WL 4993673, at *10 (D.N.J. Aug. 4, 2023) (quoting *Biomet*, 742 F. App'x at 697); *see also O'Keeffe*, 646 F. App'x at 267 (holding second *Intel* factor met and noting "district courts are discouraged from engaging in the interpretation of foreign law when conducting a Section 1782 analysis").  The party opposing discovery bears the burden of "present[ing] authoritative proof that the foreign court would reject the evidence obtained with the aid of Section 1782."  *Id.* at 266; *see also Matter of Simetra Glob.*

15

*Assets Ltd. & Richcroft Invs. Ltd.*, 2016 WL 3018692, at *4 (D.N.J. May 25, 2016) ("[P]arties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence.").

There is no evidence that the English court will not be receptive to accepting evidence obtained through Section 1782 discovery.  In fact, as the Third Circuit has recognized, the House of Lords in England has previously held that "parties to an English litigation [a]re entitled to prepare their case by obtaining documents in a foreign country . . . includ[ing] the right to seek discovery under § 1782." *Bayer AG*, 146 F.3d at 194-95 (citing *South Carolina Ins. Co. v. Assurantie Maatschappik "De Zeven Provincien" N.V.*, [1987] 1 App. Cas. 24 (1986) (House of Lords)).  Other courts have reached the same conclusion.  *See, e.g.*, *Simetra*, 2016 WL 3018692, at *4 ("[T]here is no indication that the English Court would reject the evidence that Petitioners seek to elicit from [the discovery target].")"; *In re Novoship (UK) Ltd.*, 2020 WL 3286308, at *3 (S.D. Fla. June 18, 2020) ("[T]here is no indication that the courts of the United Kingdom would be unreceptive to American evidence and, in fact, § 1782 is routinely used to obtain evidence for proceedings in that country.").  Simply put, there is no evidence that the English court would be unreceptive to discovery obtained through this Application.  The second *Intel* factor therefore weighs in favor of granting discovery.

### C.    This Application Does Not Implicate Any Foreign Proof-Gathering Restrictions.

The third *Intel* factor requires this Court to consider "whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  Again, whether the discovery sought would be discoverable or admissible in the foreign proceeding has no bearing on this inquiry.  *See In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011) (in evaluating this factor,

noting "there is no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to a section 1782 request in the United States"). For that reason, the Third Circuit has found this factor met even where the foreign tribunal previously rejected identical discovery requests in the foreign proceedings. *See id.* at 163 (holding that "regardless of that [foreign] court's rulings on Chevron's request for documents, it would be a stretch to conclude that the section 1782 proceeding was an attempt to circumvent Ecuadorian restrictions" because "a court might offer limited discovery opportunities yet accept relevant evidence tendered to it if procured without its assistance"). Nor is an applicant required to first exhaust all other discovery options in the foreign tribunal before seeking U.S.-court assistance. *See In re Martin & Harris Priv. Ltd.*, 2021 WL 2434069, at *5, *7 (D.N.J. June 14, 2021) (finding third factor met and noting that an applicant does not "need to seek the discovery in the foreign proceeding before seeking relief under § 1782"); *O'Keeffe*, 646 F. App'x at 268 ("We have never held that an applicant must seek discovery relief in the foreign forum first."). Rather, "something must indicate bad faith or gamesmanship that undercuts Section 1782's goals of comity or efficiency." *Rosa Carolina*, 2023 WL 4993673, at *10. Critically, this Court has held that a discovery target's "assertion that [the foreign] courts would find the subpoenas to be overbroad is not a basis to find circumvention," and in fact, "that Petitioners could not obtain the discovery in [the foreign tribunal] **bolsters** the need for discovery sought in this District." *Id.* (emphasis added) (finding third factor met because "narrow German discovery rules do not serve as a basis to find circumvention").

Here, the Application does not implicate any foreign proof-gathering restrictions. Moussy has been unable to obtain information regarding the provision and receipt of Parker Services because he has been ousted from the African Businesses. Moreover, the English court

has not denied similar discovery; indeed, the scope of the discovery sought aligns with the topics

of party disclosure already permitted by the English court, including with respect to Monline

UK's and other unknown third parties' provision of Parker Services, the nature of those services,

the payments for and value of those services, and whether those services are provided today. *See*

Goldring Decl. ¶ 14.  Although the English court has already acknowledged the need for this

discovery, it lacks jurisdiction to order it from Sutton, hence the need for this Application.

### D.     The Discovery Sought Is Not Unduly Burdensome.

The fourth *Intel* factor assesses whether Moussy's request for discovery is "unduly

intrusive or burdensome." *Intel*, 542 U.S. at 245.  It is not.  Courts applying Section 1782 do not

limit discovery to the scope of discovery available in the foreign proceeding, as "the scope of

discovery is not as far-reaching in foreign litigation as it is in domestic litigation." *Bayer AG*,

146 F.3d at 192.  Rather, Section 1782 "allows a party to procure Rule 26-style discovery for use

in a foreign tribunal." *Biomet*, 742 F. App'x at 692.  Courts evaluating a Section 1782

application therefore "should assess whether the discovery sought is overbroad or unduly

burdensome by applying the familiar standards" of the Federal Rules of Civil Procedure.  *Mees*,

793 F.3d at 302 (rejecting district court's assessment of burden based on the scope of discovery

in the Netherlands).  A party opposing discovery must make a "specific showing of burden" to

defeat a discovery request, such as "empirical evidence that [an applicant's] request would be too

burdensome." *Biomet*, 742 F. App'x at 699-700.  To the extent that a court finds a discovery

request overbroad, it should consider whether that defect can be cured through a more limited

grant of discovery rather than denying the application outright.  *See id.* at 700 (noting that where

an applicant is "asking for too much, the district court can and should cut down its request, but

18

not to nothing" (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011))).

Here, the discovery Moussy seeks is not unduly burdensome.  Moussy seeks information regarding, *inter alia*, the provision and receipt of Parker Services, payments for and the value of those services, whether those services were still necessary and/or provided after March 2021, and if so, what entity provided them.  This information is highly relevant to evaluating what should have constituted valuable consideration for the transfer of Parker Services to Monline UK, proving the damages Monline International suffered as a result of the transfer, and the English Defendants' conspiracy to divert and conceal monies to which Monline International is lawfully entitled.  The discovery sought should be readily available to Sutton as a director of two African Businesses with close corporate and operational ties to other African Businesses.  Although Moussy does not believe these requests impose any undue burden, Moussy will engage in a good faith effort to meet and confer over the parameters of Sutton's search to minimize any legitimate concerns.  Thus, the fourth *Intel* factor weighs in favor of granting Moussy's Application.

## CONCLUSION

For the foregoing reasons, Moussy respectfully requests that this Court grant his Application authorizing the issuance of the Subpoena to Sutton in the form attached to the Application as **Exhibit A**, authorize Moussy to issue additional subpoenas for the production of documents and/or depositions of Sutton as appropriate, and for such other and further relief as this Court deems just and proper.

Dated: January 18, 2024

Respectfully submitted,

**BROWN RUDNICK LLP**


By: *<u>/s/ Lauren Tabaksblat</u>*
    Lauren Tabaksblat
    (Bar No. 037322008)
    Tyler D. Purinton
    (*pro hac vice* forthcoming)

    7 Times Square
    New York, New York 10036
    Telephone: (212) 209-4800
    Facsimile: (212) 209-4801
    ltabaksblat@brownrudnick.com
    tpurinton@brownrudnick.com

*Counsel for Applicant Moussy Salem*